UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **CARYN JAMES**, <br><br> Plaintiff, <br><br> vs. <br><br> **BANK OF AMERICA, N.A.**, and **CHEX SYSTEMS, INC.**, a Minnesota corporation, <br><br> Defendants. | CASE NO. <br><br> JUDGE: <br><br> CLASS ACTION - JURY |

## CLASS ACTION COMPLAINT

Plaintiff, CARYN JAMES (hereinafter referred to as "PLAINTIFF"), by and through undersigned counsel, alleges upon knowledge as to herself and her own acts, and upon information and belief as to all other matters, and brings this complaint against Defendants, BANK OF AMERICA, N.A. (hereinafter referred to as "BOA") and CHEX SYSTEMS, INC. (hereinafter referred to as "CSI") (collectively referred to as "DEFENDANTS") and in support thereof alleges the following:

## PRELIMINARY STATEMENT

1. PLAINTIFF brings this action for actual and statutory damages arising from DEFENDANTS' violations of the Fair Credit Reporting Act (hereinafter referred to as the "FCRA"), 15 U.S.C. § 1681, *et seq*. DEFENDANTS do not maintain adequate investigation procedures and incorrectly report information on consumers' credit reports. CSI further sends out letters that do not accurately convey information required by the FCRA.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 15 U.S.C. § 1681p.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the Northern District of Texas.

## PARTIES

4. PLAINTIFF is a natural person residing in Dallas, Texas.

5. PLAINTIFF is a "consumer" as defined in the FCRA at 15 U.S.C. § 1681(c).

6. BOA is a nationally chartered banking corporation with its corporate headquarters in Charlotte, North Carolina.

7. CSI is a corporation formed in Minnesota with its principal address at 7805 Hudson Road, Suite 100, Woodbury, Minnesota, 55125.

8. PLAINTIFF is informed and believes, and thereon alleges, that CSI is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

9. PLAINTIFF is informed and believes, and thereon alleges, that BOA is a "furnisher of information" as included in 15 U.S.C. § 1681s–2.

10. BOA inaccurately reported credit information to CSI.

11. BOA received notice of PLAINTIFF's dispute from CSI.

## STATEMENT OF FACTS

12. PLAINTIFF repeats, re-alleges, and incorporates by reference, paragraphs 1 through 11 inclusive, above.

13. On or about October 30, 2013, PLAINTIFF wrote a check from her JP Morgan Chase Bank, N.A., checking account for $100.00 and deposited it into her BOA account via an ATM deposit.

14. PLAINTIFF deposited this check because she believed that her paycheck had been deposited in her Chase account and had cleared in full.

15. Unbeknownst to her, the funds had not yet cleared in her Chase account.

16. As a result, the funds were not available.

17. BOA returned the check as NSF, debited PLAINTIFF's account for $100.00, and closed the account.

18. BOA also reported PLAINTIFF's account to CSI as having "SUSPECTED FRAUD ACTIVITY" ("SFA").

19. In December, 2015, PLAINTIFF called CSI to dispute the SFA tradeline.

20. On or about January 3, 2016, CSI wrote a letter response to PLAINTIFF summarizing her rights as a fraud victim, a true and correct copy of which is attached as **Exhibit 1**.

21. CSI did not reinvestigate PLAINTIFF'S dispute.

22. In July, 2016, PLAINTIFF again called CSI to dispute the SFA tradeline, explaining the cause of the SFA tradeline, and emphasized that there was no fraud activity involved.

23. On or about July 21, 2016, CSI wrote a letter response stating that it would investigate the dispute, a true and correct copy of which is attached as **Exhibit 2**.

24. On or about August 5, 2016, CSI wrote another letter to PLAINTIFF, a true and correct copy of which is attached as **Exhibit 3**, stating that BOA verified the information as accurate.

25. This letter states that PLAINTIFF "may be entitled to add a statement to [her] file disputing the accuracy or completeness of the information." *Id.*

26. According to CSI, "[BOA] explained that it was a new account and a deposit from October 31, 2013 via ATM was returned as NSF and debited to the account on November 4, 2013 causing suspected fraud activity reporting and subsequent closure of the account." *Id.*

27. After calling CSI in response to this letter, a CSI representative instructed PLAINTIFF to call BOA and dispute the tradeline with them.

28. On or about August 28, 2016, PLAINTIFF wrote a letter to BOA explaining the source of the NSF check and explaining again that there was no fraudulent activity, a true and correct copy of which is attached as **Exhibit 4**.

29. PLAINTIFF did not receive a response to this letter.

30. When PLAINTIFF called BOA after sending the letter, its representative informed her that they were not going to request deletion of the SFA tradeline.

31. Due to the tradeline, PLAINTIFF has been unable to open new joint checking accounts with several banks and credit unions.

32. PLAINTIFF further has been denied access to merchant banking accounts for her businesses, rendering her unable to accept credit card and ACH payments.

## CLASS ACTION ALLEGATIONS

33. PLAINTIFF repeats, re-alleges, and incorporates by reference, paragraphs 1 through 32 inclusive, above.

34. PLAINTIFF brings this claim individually and on behalf of all others similarly situated for the purpose of asserting the claim alleged in this Complaint on a common basis. PLAINTIFF's proposed class is defined under Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 23(b)(3), and PLAINTIFF proposes to act as representative of the following class:

    a. A class consisting of consumers who:

      i. Reside in Texas; and

      i. Within five years prior to the filing of this action;

      ii. Received a letter from CSI in response to an investigation;

      iii. Which stated that the recipient "may be entitled to add a statement to your file disputing the accuracy or completeness of the information."

35. PLAINTIFF does not know the exact size or identities of the class, as CSI maintains exclusive control of such information. PLAINTIFF believes that the class includes between 1,000 and 5,000 individuals whose identities can be readily determined from CSI's business records. Therefore, the proposed class is so numerous that joinder of all members is impracticable.

36. All class members have been affected by the same conduct. The common questions of law and fact predominate over any questions affecting only individual members of the classes. These questions include, but are not limited to:

    a. Whether CSI's letter violated 15 U.S.C. § 1681i(a)(6)(B)(iv) by stating that the consumer "may be entitled to add a statement to your file disputing the accuracy or completeness of the information";

    b. The identities of individuals who received a substantially similar collection letter from CSI; and

    c. The total number of collection letters that CSI mailed to consumers.

37. PLAINTIFF's claims are typical of the claims of the class and do not conflict with the interests of any other class members. PLAINTIFF and the members of the class were uniformly subjected to the same conduct.

38. Upon information and belief, CSI has a practice and policy of sending letters that do not comply with 15 U.S.C. § 1681i(a)(6)(B)(iv).

39. PLAINTIFF will fairly and adequately represent the class members' interests and has retained counsel who are qualified to pursue this litigation. PLAINTIFF's counsel's firm, GESUND & PAILET, LLC, focuses on prosecuting consumer lawsuits.

40. PLAINTIFF is committed to vigorously pursuing her claims.

41. A class action is superior for the fair and efficient adjudication of the class members' claims. The members of the class are generally unsophisticated consumers whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would also create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards and would not be in the best interest of judicial economy.

42. A class action regarding the issues in this case does not create any problems of manageability.

43. If facts are discovered to be appropriate, PLAINTIFF will seek to certify the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## FIRST CLAIM FOR RELIEF

### VIOLATIONS OF THE FCRA 15 U.S.C. § 1681i(a)(1)
### BROUGHT BY PLAINTIFF INDIVIDUALLY
### AGAINST CSI

44. PLAINTIFF repeats, re-alleges, and incorporates by reference, paragraphs 1 through 43 inclusive, above.

45. Upon notice of a dispute, a consumer reporting agency shall "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1).

46. In December, 2015, PLAINTIFF called CSI to dispute the SFA tradeline.

47. On or about January 3, 2016, CSI wrote a letter response to PLAINTIFF summarizing her rights as a fraud victim. Ex. 1.

48. CSI did not reinvestigate PLAINTIFF'S dispute.

49. In July, 2016, PLAINTIFF again called CSI to dispute the SFA tradeline, explaining the cause of the SFA tradeline, and emphasized that there was no fraud activity involved.

50. On or about July 21, 2016, CSI wrote a letter response stating that it would investigate the dispute. Ex. 2.

51. On or about August 5, 2016, CSI wrote another letter to PLAINTIFF, stating that BOA verified the information as accurate. Ex. 3.

52. Upon information and belief, CSI's reinvestigation was not reasonable.

53. Despite PLAINTIFF offering evidence that no fraud occurred, CSI continued to report inaccurate and damaging information.

54. PLAINTIFF disputed the accuracy of the tradeline twice to CSI, both times explaining the NSF check and absence of fraudulent activity.

55. In its August 5, 2016 letter, CSI explained that it conducted an investigation, which summarily ended with CSI stating that the disputed information "has been verified as accurate." Ex. 3.

56. Because this investigation completely ignored PLAINTIFF's explanation of the NSF check and total absence of fraudulent activity, this was not a reasonable investigation.

57. Because their reinvestigation was not reasonable, CSI violated 15 U.S.C. § 1681i(a)(1).

58. As a result of the FCRA violations by CSI, PLAINTIFF is entitled to an award of statutory damages.

59. It has been necessary for PLAINTIFF to obtain the services of an attorney to pursue this claim, and is entitled to recover reasonable attorneys' fees therefor.

60. PLAINTIFF suffered the concrete injury of not receiving a reasonable reinvestigation, and therefore has standing for the purposes of Article III.

## SECOND CLAIM FOR RELIEF

### VIOLATIONS OF THE FCRA 15 U.S.C. § 1681i(a)(5) BROUGHT BY PLAINTIFF INDIVIDUALLY AGAINST CSI

61. PLAINTIFF repeats, re-alleges, and incorporates by reference, paragraphs 1 through 60 inclusive, above.

62. Pursuant 15 U.S.C. § 1681i(a)(5), after notice of a dispute, if an item is found to be inaccurate, the CRA shall promptly delete the information (or modify as appropriate), and notify the Furnisher that the information has been modified or deleted.

63. In December, 2015, PLAINTIFF called CSI to dispute the SFA tradeline.

64. On or about January 3, 2016, CSI wrote a letter response to PLAINTIFF summarizing her rights as a fraud victim. Ex. 1.

65. CSI did not reinvestigate PLAINTIFF'S dispute.

66. In July, 2016, PLAINTIFF again called CSI to dispute the SFA tradeline, explaining the cause of the SFA tradeline, and emphasized that there was no fraud activity involved.

67. On or about July 21, 2016, CSI wrote a letter response stating that it would investigate the dispute. Ex. 2.

68.     On or about August 5, 2016, CSI wrote another letter to PLAINTIFF, stating that BOA verified the information as accurate. Ex. 3.

69.     Despite PLAINTIFF offering evidence that no fraud occurred, CSI continued to report inaccurate and damaging information.

70.     PLAINTIFF disputed the accuracy of the tradeline twice to CSI, both times explaining the NSF check and absence of fraudulent activity.

71.     CSI did not thereafter delete the tradeline.

72.     Because it did not delete the tradeline after being informed that it was premised on false information, CSI violated 15 U.S.C. § 1681i(5).

73.     As a result of the FCRA violations by CSI, PLAINTIFF is entitled to an award of statutory damages.

74.     It has been necessary for PLAINTIFF to obtain the services of an attorney to pursue this claim, and is entitled to recover reasonable attorneys' fees therefor.

75.     PLAINTIFF suffered the concrete injury of not having false information deleted from her credit report, and therefore has standing for the purposes of Article III.

### THIRD CLAIM FOR RELIEF

**VIOLATIONS OF THE FCRA 15 U.S.C. § 1681s-2(b)
BROUGHT BY PLAINTIFF INDIVIDUALLY
AGAINST BOA**

76.     PLAINTIFF repeats, re-alleges, and incorporates by reference, paragraphs 1 through 75 inclusive, above.

77.     Pursuant to 15 U.S.C. § 1681s-2(b), after receiving notice from the consumer reporting agency that the consumer has disputed the information pursuant to 15 U.S.C. §

1681i(a)(2), the Furnisher shall conduct an investigation regarding the information, and delete the information if it is found to be inaccurate.

78. On or about July 21, 2016, CSI wrote a letter response stating that it would investigate the dispute. Ex. 2.

79. On or about August 5, 2016, CSI wrote another letter to PLAINTIFF, stating that BOA verified the information as accurate. Ex. 3.

80. As such, BOA received notice of the dispute from CSI between July 21, 2016 and August 5, 2016.

81. BOA stated that it confirmed the accuracy of the SFA tradeline.

82. This was not a reasonable reinvestigation.

83. In December, 2015, PLAINTIFF called CSI to dispute the SFA tradeline.

84. In July, 2016, PLAINTIFF again called CSI to dispute the SFA tradeline, explaining the cause of the SFA tradeline, and emphasized that there was no fraud activity involved.

85. PLAINTIFF disputed the accuracy of the tradeline twice to CSI, both times explaining the NSF check and absence of fraudulent activity.

86. BOA ignored PLAINTIFF's evidence.

87. PLAINTIFF offered evidence that no fraud occurred.

88. Despite PLAINTIFF offering evidence that no fraud occurred, BOA continued to report inaccurate and damaging information.

89. By ignoring this information, BOA did not conduct a reasonable reinvestigation.

90. By neglecting to conduct a reasonable reinvestigation, BOA violated 15 U.S.C. § 1681s-2(b).

91. As a result of the FCRA violations by BOA, PLAINTIFF is entitled to an award of statutory damages.

92. It has been necessary for PLAINTIFF to obtain the services of an attorney to pursue this claim, and is entitled to recover reasonable attorneys' fees therefor.

93. PLAINTIFF suffered the concrete injury of not having a furnisher conduct a reasonable reinvestigation, and therefore has standing for the purposes of Article III.

## FOURTH CLAIM FOR RELIEF

### VIOLATIONS OF THE FCRA 15 U.S.C. § 1681s-2(b)(1)(E)(ii) BROUGHT BY PLAINTIFF INDIVIDUALLY AGAINST BOA

94. PLAINTIFF repeats, re-alleges, and incorporates by reference, paragraphs 1 through 93 inclusive, above.

95. After reinvestigation, if an item is found to be inaccurate, a furnisher shall request deletion of that tradeline. 15 U.S.C. § 1681s-2(b)(1)(E)(ii).

96. In December, 2015, PLAINTIFF called CSI to dispute the SFA tradeline.

97. In July, 2016, PLAINTIFF again called CSI to dispute the SFA tradeline, explaining the cause of the SFA tradeline, and emphasized that there was no fraud activity involved.

98. PLAINTIFF offered evidence that no fraud occurred.

99. PLAINTIFF disputed the accuracy of the tradeline twice to CSI, both times explaining the NSF check and absence of fraudulent activity.

100. BOA ignored PLAINTIFF's evidence.

101. After calling CSI in response to this letter, a CSI representative instructed PLAINTIFF to call BOA and dispute the tradeline with them.

102. On or about August 28, 2016, PLAINTIFF wrote a letter to BOA explaining the source of the NSF check and explaining again that there was no fraudulent activity. Ex. 4.

103. PLAINTIFF did not receive a response to this letter.

104. When PLAINTIFF called BOA after sending the letter, its representative informed her that they were not going to request deletion of the SFA tradeline.

105. By refusing to request deletion of a tradeline based on inaccurate information, BOA violated 15 U.S.C. § 1681s-2(b)(1)(E)(ii).

106. As a result of the FCRA violations by BOA, PLAINTIFF is entitled to an award of statutory damages.

107. It has been necessary for PLAINTIFF to obtain the services of an attorney to pursue this claim, and is entitled to recover reasonable attorneys' fees therefor.

108. PLAINTIFF suffered the concrete injury of not having false information deleted from her credit report, and therefore has standing for the purposes of Article III.

### FIFTH CLAIM FOR RELIEF

**VIOLATIONS OF THE FCRA 15 U.S.C. § 1681i(a)(1)(A)
BROUGHT BY PLAINTIFF INDIVIDUALLY
AGAINST CSI**

109. PLAINTIFF repeats, re-alleges, and incorporates by reference, paragraphs 1 through 108 inclusive, above.

110. After notice of a dispute, a consumer reporting agency has 30 days to conduct a reasonable investigation. 15 U.S.C. § 1681i(a)(1)(A).

111. In December, 2015, PLAINTIFF called CSI to dispute the SFA tradeline.

112. CSI did not investigate the tradeline until July, 2016.

113. By waiting longer than 30 days to conduct the investigation, CSI violated 15 U.S.C. § 1681i(a)(1)(A).

114. As a result of the FCRA violations by BOA, PLAINTIFF is entitled to an award of statutory damages.

115. It has been necessary for PLAINTIFF to obtain the services of an attorney to pursue this claim, and is entitled to recover reasonable attorneys' fees therefor.

116. PLAINTIFF suffered the concrete injury of not receiving a timely investigation as guaranteed by law, and therefore has standing for the purposes of Article III.

## SIXTH CLAIM FOR RELIEF

**VIOLATIONS OF THE FCRA 15 U.S.C. § 1681i(a)(6)(B)(iv)
BROUGHT BY PLAINTIFF INDIVIDUALLY
AND ON BEHALF OF THE CLASS
AGAINST CSI**

117. PLAINTIFF repeats, re-alleges, and incorporates by reference, paragraphs 1 through 116 inclusive, above.

118. If a consumer reporting agency conducts a reinvestigation, they must provide a notice to the consumer stating "that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information." 15 U.S.C. § 1681i(a)(6)(B)(iv).

119. On or about August 5, 2016, CSI wrote another letter to Ms. James stating that BOA verified the information as accurate. Ex. 3.

120. In this letter, CSI states that "[y]ou may be entitled to add a statement to your file disputing the accuracy or completeness of the information." *Id.*

121. By stating that the recipient "may be entitled" to add a statement, instead of simply stating that the consumer is guaranteed the right by law to add a statement, CSI violated 15 U.S.C. § 1681i(a)(6)(B)(iv).

122. As a result of the FCRA violations by BOA, PLAINTIFF is entitled to an award of statutory damages.

123. It has been necessary for PLAINTIFF to obtain the services of an attorney to pursue this claim, and is entitled to recover reasonable attorneys' fees therefor.

124. PLAINTIFF suffered the concrete injury of receiving communications from individuals that do not comply with the FCRA, and therefore has standing for the purposes of Article III.

## DEMAND FOR JURY TRIAL

125. Please take notice that PLAINTIFF demands trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF respectfully prays that this Court grant the following relief in PLAINTIFF'S favor, and on behalf of the class, and that judgment be entered against DEFENDANTS for the following:

(1) For actual damages incurred by PLAINTIFF;

(2) For statutory damages awarded to PLAINTIFF, not to exceed $1,000 from each DEFENDANT, pursuant to 15 U.S.C. § 1681n;

(3) For statutory damages awarded to the class, not to exceed $1,000 to each class member;

(4) For disgorgement of all of DEFENDANTS' revenues obtained through use of the practices at issue;

(5) For reasonable attorneys' fees for all services performed by counsel in connection with the prosecution of these claims;

(6)     For reimbursement for all costs and expenses incurred in connection with the prosecution of these claims; and

(7)     For any and all other relief this Court may deem appropriate.

Dated: April 3, 2017

                          Respectfully Submitted,

                          **GESUND & PAILET, LLC**

                          /s/ Keren E. Gesund
                          KEREN E. GESUND
                          **GESUND & PAILET, LLC**
                          3421 N. Causeway Blvd.
                          Suite 805
                          Metairie, LA 70002
                          Tel: (702) 300-1180
                          keren@gp-nola.com
                          *Attorney for Plaintiff*